UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Health Care Service Corporation et al., | Case No. 21-cv-0461 (WMW/KMM) |
| Plaintiffs, | |
| v. | **ORDER REMANDING CASE TO STATE COURT** |
| Albertsons Companies, LLC, et al., | |
| Defendants. | |

---

Plaintiffs Health Care Service Corporation (HCSC), Blue Cross and Blue Shield of Minnesota (BCBSM), and HMO Minnesota commenced this action against Defendants Albertsons Companies, Inc.[1] (Albertsons); Safeway, Inc. (Safeway); and SuperValu, Inc. (SuperValu), alleging that Defendants fraudulently overcharged for prescription drugs. Plaintiffs move to remand this case to Dakota County District Court, First Judicial District. (Dkt. 44.) Defendants move to dismiss. (Dkt. 15, 25.) For the reasons addressed below, the Court grants Plaintiffs' motion to remand and declines to address Defendants' motions to dismiss.

## BACKGROUND

Plaintiffs are three corporations that administer self-funded health insurance plans. HCSC is a mutual legal reserve company in Illinois that underwrites and administers health

---

[1] Plaintiffs named Albertsons Companies, LLC, as a Defendant. However, in 2018, Albertsons Companies, LLC, merged with Albertsons Companies, Inc. As the entity is now known as Albertsons Companies, Inc., the Court will use its current legal name.

insurance plans in the states of Illinois, Texas, Oklahoma, New Mexico and Montana. BCBSM is a Minnesota corporation that provides health insurance plans and services to its members. HMO Minnesota is a Minnesota corporation that offers commercial health insurance plans for individuals, families and employers.

Defendants are three retail grocery and pharmacy companies. Albertsons is incorporated in Delaware, and its headquarters is in Boise, Idaho. Safeway, a subsidiary of Albertsons, is incorporated in Delaware, and its headquarters is in Pleasanton, California. SuperValu is incorporated in Delaware, and its headquarters is in Eden Prairie, Minnesota.

Plaintiffs commenced this action in Dakota County District Court, First Judicial District, on January 21, 2021, alleging six state-law fraud claims. On February 19, 2021, Defendants removed the case to federal court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1). Plaintiffs allege that Defendants engaged in a fraudulent scheme in which Defendants overcharged health insurance plans for prescription drugs.

Plaintiffs move to remand this case to Dakota Country District Court, First Judicial District. Defendants move to dismiss.

## ANALYSIS

I.   **Plaintiffs' Motion to Remand**

Federal courts are courts of limited jurisdiction. In order to adjudicate a case, a federal court must have subject-matter jurisdiction over the specific claim that is before the court. There are two primary sources of federal subject-matter jurisdiction: diversity

jurisdiction and federal-question jurisdiction. Here, because Plaintiffs allege only state-law fraud claims, federal-question jurisdiction is not implicated. Therefore, this matter can remain in federal court only if diversity jurisdiction is established. Diversity jurisdiction permits a case to remain in federal court when the amount in controversy exceeds $75,000 and the parties are completely diverse such that no plaintiff shares a state of citizenship with any defendant.[2] *See* 28 U.S.C. § 1332.

Plaintiffs move to remand this case to state court, arguing that this Court lacks subject matter jurisdiction because there is not complete diversity between Plaintiffs and Defendants. Albertsons and Safeway admit that the parties are not completely diverse. But, seeking to avoid remand, Albertsons and Safeway argue that the Court should sever and remand only the claims against the non-diverse Defendant, SuperValu, and assert diversity jurisdiction over the claims involving Albertsons and Safeway. In the alternative, Albertsons and Safeway argue that the Court should sever and remand all claims asserted by Plaintiff BCBSM and Plaintiff HMO Minnesota (Minnesota Plaintiffs), because complete diversity exists between Plaintiff HCSC and all Defendants.

When a case has been removed from state court, a federal court must remand the case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *accord In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1066 (8th Cir. 2000). Albertsons and Safeway removed this case to this Court based

---

[2] Plaintiffs allege that the fraudulent scheme caused "millions of dollars in damages." Therefore, the amount-in-controversy requirement is satisfied.

on diversity jurisdiction. "Complete diversity of citizenship exists [when] no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). For the purposes of establishing diversity jurisdiction, a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The burden rests with the removing parties to establish by a preponderance of the evidence that federal subject-matter jurisdiction exists. *See Pub. Sch. Ret. Sys. of Mo. v. State St. Bank & Tr. Co.*, 640 F.3d 821, 825–26 (8th Cir. 2011); *see also Great Rivers Habitat All. v. Fed. Emergency Mgmt. Agency*, 615 F.3d 985, 988 (8th. Cir. 2010) (stating that the burden of proving federal jurisdiction always remains on the party seeking to establish it). All doubts regarding federal jurisdiction are resolved in favor of remanding to state court. *See Junk v. Terminix Int'l Co.*, 628 F.3d 439, 446 (8th Cir. 2010).

It is undisputed that complete diversity does not exist in this case because the Minnesota Plaintiffs and SuperValu are citizens of Minnesota. The parties dispute, however, whether the doctrine of fraudulent misjoinder requires the Court to sever the non-diverse parties to preserve complete diversity.

    **A.**     **Fraudulent Misjoinder**

Albertsons and Safeway argue that either SuperValu *or* the Minnesota Plaintiffs are fraudulently misjoined and the misjoined parties' citizenship should be disregarded under the doctrine of fraudulent misjoinder. Plaintiffs contend that fraudulent misjoinder is not

4

recognized by the United States Court of Appeals for the Eighth Circuit and, even if it were, remand is warranted because Albertsons and Safeway fail to satisfy their burden to demonstrate fraudulent misjoinder.

Multiple parties may join an action as plaintiffs if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Rule 20 also provides an identical standard for joinder of defendants, which states that defendants may be joined in one action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."[3] Fed. R. Civ. P. 20(a)(2).

Fraudulent misjoinder is an exception to the jurisdictional requirement of complete diversity and applies when there is no reasonable procedural basis to join claims by or against a non-diverse party under Rule 20, Fed. R. Civ. P.[4] *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (creating the doctrine of fraudulent misjoinder), *abrogated on other grounds by Cohen v. Off. Depot, Inc.*, 204 F.3d 1069,

---

[3]   The Minnesota rule on permissive joinder is identical to the federal rule in all relevant respects. *Compare* Minn. R. Civ. P. 20.01, *with* Fed. R. Civ. P. 20.

[4]   Fraudulent misjoinder occurs when a plaintiff has a viable claim against the non-diverse defendant but the allegations against the non-diverse defendant do not arise out of the same transaction or occurrence as the diverse defendant. *See* 14C Charles A. Wright, et al., *Federal Practice and Procedure* § 3723.1 (rev. 4th ed. 2021).

5

1072–73 (11th Cir. 2000). Fraudulent misjoinder occurs when parties with "no real connection to the controversy" are joined, and the connection is "so egregious as to constitute fraudulent [mis]joinder." *Id.* at 1360. The Eighth Circuit has neither adopted nor rejected the judicially created fraudulent-misjoinder doctrine. *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010). If the fraudulent-misjoinder doctrine were rejected by the Eighth Circuit, remand would be necessary here because complete diversity undisputedly does not exist. But assuming, without deciding, the viability of the fraudulent-misjoinder doctrine, remand nonetheless is warranted here for the reasons addressed below.

Albertsons and Safeway advance two arguments as to why the Court has jurisdiction: (1) the claims asserted against SuperValu were fraudulently misjoined with the claims asserted against Albertsons and Safeway and (2) the claims asserted by the Minnesota Plaintiffs were fraudulently misjoined with the claims asserted by HCSC. It is only if the Court were to sever and remand *either* the claims against SuperValu *or* the claims by the Minnesota Plaintiffs that complete diversity would exist. The Court addresses, in turn, Albertsons and Safeway's arguments for fraudulent misjoinder as to SuperValu and the Minnesota Plaintiffs.

    1.    **SuperValu**

The parties dispute whether SuperValu is fraudulently misjoined with Albertsons and Safeway.

The first step of a fraudulent misjoinder analysis is to determine whether the defendants were properly joined. *See Prempro*, 591 F.3d at 622; *see also Tapscott*, 77 F.3d at 1360. Multiple defendants may be joined in one action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "The purpose of [Rule 20] is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974). For this reason, joinder is permitted for all "reasonably related" claims against defendants. *Id.* at 1333. A court assesses whether claims are reasonably related on a case-by-case basis. *Id.* All questions of law and fact raised by the dispute need not be in common. *See id.* at 1334. Rather, common questions may be found in "a wide range of context[s]." *Id.*

        **a.**    **Same Transaction or Occurrence**

The parties dispute whether the rights to relief asserted against SuperValu, Albertsons and Safeway arise out of the same transaction or occurrence.

In construing Rule 20, Fed. R. Civ. P., the Eighth Circuit has defined "transaction" broadly:

> "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.

> Accordingly, all "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

*Id.* at 1333 (internal citations omitted); *see also* 7 Charles A. Wright et al., *Federal Practice and Procedure,* § 1653 (3d ed. 2021) (explaining that the transaction-or-occurrence requirement of Rule 20(a) is not a rigid test and is meant "to be read as broadly as possible whenever doing so is likely to promote judicial economy").

A summary of the alleged fraudulent scheme demonstrates that Plaintiffs' claims against each defendant are "logically related." *Mosley*, 497 F.2d at 1333. Plaintiffs' allegations center on each Defendant's pharmacy reimbursement practices. When a patient fills a prescription at a pharmacy, the patient's insurer typically reimburses the pharmacy for a portion of the prescription's price by paying the "Usual and Customary" (U&C) price or a lesser negotiated price. The U&C price functions as a ceiling on what a pharmacy will receive from the health insurance plans for each filled prescription. The U&C price is calculated using the amount customers without health insurance plan benefits pay the pharmacy for each prescription drug.

Plaintiffs allege that each Defendant artificially inflated the price that the health insurance plans paid for prescription drugs. Defendants allegedly carried out their fraud by using discount programs to mask the actual U&C price.

Plaintiffs allege that each Defendant submitted inflated U&C prices to Plaintiffs for prescription drugs dispensed to the members of Plaintiffs' health insurance plans. Defendants allegedly hid their true U&C prices from the health insurance plans by creating discount programs in which some customers would pay a lower price and other customers would pay a higher price for the same drugs. Each Defendant had a different discount program: Albertsons's was called the RxTra program, Safeway's programs were the Matching Competitor Generics Program and the Automatic Discount Drug Program, and SuperValu's program was called the Price Match Program (collectively, the Discount Programs). Although the Discount Programs had different names, each allegedly had the same two functions, (1) to grow and maintain the pharmacy's market share by offering cash-paying customers low prices on prescription drugs and (2) to hide the pharmacy's true U&C prices from third-party payors like Plaintiffs. The Discount Programs permitted Defendants to attract customers with discounted drugs, while simultaneously keeping their U&C prices high, allegedly so that Defendants could overcharge health insurance plans. Defendants allegedly used the Discount Programs to sell prescription drugs for a lower price, but they did not adjust their U&C prices to reflect those discounts. This practice allowed Defendants to artificially inflate the U&C prices, which in turn allowed Defendants to obtain inflated reimbursements for prescription drugs from Plaintiffs, who are corporations that administer health insurance plans.

Defendants submitted their allegedly fraudulent claims for payment through non-party Prime Therapeutics, LLC (Prime), a pharmacy benefits manager headquartered in

Minnesota. After Prime processed Defendants' claims for payment and submitted those claims to Plaintiffs' respective health insurance plans, the health insurance plans paid Prime, which in turn paid Defendants for the cost of the drugs. Plaintiffs allege that through the Discount Programs, Defendants set their U&C prices at multiples of five, ten, or twenty times the price that cash-paying customers actually paid. Plaintiffs allege that the fraudulent scheme resulted in millions of dollars in damages.

Each Defendant engaged in a similar fraudulent scheme, using similar Discount Programs and the same pharmacy benefits manager, Plaintiffs allege, inflicting upon Plaintiffs millions of dollars in damages. Accordingly, based on the facts alleged in this case, the claims against SuperValu, Albertsons and Safeway are reasonably related and, thus, arise out of the same "transaction or occurrence." *Mosley*, 497 F.2d at 1333 (stating that "all reasonably related claims for relief by or against different parties [can] be tried in a single proceeding").

### b.     Common Questions of Law or Fact

The second requirement for permissive joinder of defendants is that a "question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(B). The parties dispute whether any question of law or fact common to all defendants will arise in this action.

Rule 20 does not require that "all questions of law and fact raised by the dispute be common." *Mosley*, 497 F.2d at 1334. Nor does Rule 20 establish a qualitative or quantitative test of commonality. *See id.* However, courts have found common questions

10

of law or fact "in a wide range of context[s]." *Id.* The Court addresses, in turn, whether there are common questions of fact and whether there are common questions of law in this case.

### i. Common Questions of Fact

As there are questions of fact common to each Defendant, *supra* Section I.A.1.a. of this Order, the court that adjudicates this case will have to address the relevance of the fact that Defendants used Prime as their pharmacy benefits manager. The methods Defendants used to conceal the alleged fraud within their respective Discount Programs will involve facts common to all Defendants. The fact that each Defendant had its own Discount Program does not preclude the Court from determining that there are common questions of fact. *See id.* (permitting joinder of plaintiffs harmed by the same defendants even though "each plaintiff may have suffered different effects from the alleged discrimination"). The presence of *some* facts that are unique to each Defendant does not preclude the existence of facts common to each Defendant. Although each Discount Program had unique terms and conditions, every Discount Program accomplished the same task—masking the actual prices paid by customers without insurance so that each Defendant could fraudulently overcharge health insurance providers. Therefore, there are multiple questions of fact that are common to Defendants.

Not only were the alleged fraudulent schemes similar, but also Defendants had overlapping ownership structures. Plaintiffs allege that Albertsons and SuperValu exchanged ownership of various divisions and subsidiary stores during the time period

11

relevant to this lawsuit. SuperValu purchased several of Albertsons's divisions and subsidiary stores in 2006 and subsequently sold those divisions and stores back to Albertsons in 2013. The alleged U&C pricing fraud persisted at these locations despite the transfers of ownership, supporting an inference of collusion or, at least, common questions of fact as to how the fraud continued despite transfers of ownership. The intertwined nature of Albertsons and SuperValu's business dealings—combined with the fact that Safeway is a subsidiary of Albertsons—demonstrates that there are questions of fact common to all Defendants that will arise in this case. *See* Fed. R. Civ. P. 20(a)(2)(B).

### ii.   Common Questions of Law

As the Court finds common questions of fact, it need not address common questions of law. *See Mosley*, 497 F.2d at 1334 ("The second requisite necessary to sustain a permissive joinder under the rule is that a question of law *or* fact common to all the parties will arise in the action." (emphasis added)). The Court nonetheless briefly addresses the common questions of law that will arise in this action.

Each of Plaintiffs' claims alleges either fraud, negligent misrepresentation, unjust enrichment or deceptive trade practices. And all of Plaintiffs' claims for relief are alleged against all Defendants. Because the same claims are alleged against each Defendant, the same questions of law will be analyzed as to each Defendant. Consequently, there also are common questions of law.

As common questions of fact *and* law exist in this case, joinder is proper. Moreover, joining SuperValu with Albertsons and Safeway will enhance judicial efficiency by

avoiding duplicative discovery and multiple judges applying the same questions of law to common facts. *See, e.g.*, *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) (observing that "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties" and "joinder of claims, parties and remedies is strongly encouraged").

The relief sought against SuperValu, Albertsons and Safeway arises from the same broadly defined transactions or occurrences that involve common questions of law *and* fact. Thus, Albertsons and Safeway fail to demonstrate that joinder is "so egregious as to constitute fraudulent misjoinder." *Prempro*, 591 F.3d at 622. Accordingly, the joinder of SuperValu with Albertsons and Safeway is proper.

### 2. The Minnesota Plaintiffs: Fraudulent Misjoinder

The parties dispute whether the claims asserted by the Minnesota Plaintiffs are fraudulently misjoined with the claims asserted by HCSC. Multiple parties may join one action as plaintiffs if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transaction or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). As addressed above, "transaction" is broadly defined. *Mosley*, 497 F.2d at 1333. And as long at Plaintiffs' claims are "reasonably related," they may be joined as parties in a single proceeding. *Id.*

Albertsons and Safeway argue that the Court should disregard the citizenship of the Minnesota Plaintiffs because HCSC's claims are legally and factually distinct from the

13

Minnesota Plaintiffs' claims. But Plaintiffs' allegations arise from the same series of transactions and involve common questions of law and fact. *See supra* Section I.A.1.a. Each Plaintiff asserts the same six counts against each Defendant, and each Plaintiff owns health insurance plans that were harmed by Defendants' allegedly fraudulent schemes. Although each Plaintiffs' claims are based on different pricing data transmitted at different times to different health insurers, the claims are reasonably related. Bifurcation of this action into multiple proceedings, would result in a waste of judicial resources. *See, e.g.*, *United Mine Workers*, 383 U.S. at 724 (holding that joinder is "strongly encouraged," as long as joinder is fair). Albertsons and Safeway fail to establish that the joinder of Plaintiffs' claims violates Rule 20, Fed. R. Civ. P., and fail to show that the joinder of Plaintiffs' claims is "egregiously misjoined." *Prempro*, 591 F.3d at 623. Plaintiffs are properly joined, and there is no basis for the Court to sever HCSC's claims from the Minnesota Plaintiffs' claims. Accordingly, Albertsons and Safeway's fraudulent-misjoinder argument fails.

### 3. Federal Rule of Civil Procedure 21

Alternatively, Albertsons and Safeway contend that the Court should dismiss the non-diverse parties pursuant to Rule 21, Fed. R. Civ. P., to preserve federal diversity jurisdiction. Plaintiffs disagree, arguing that doing so would artificially create federal diversity jurisdiction.

"Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also

sever any claim against a party." Fed. R. Civ. P. 21; *see also, e.g.*, *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) ("Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . ."). When applying Rule 21, courts "should carefully consider whether the dismissal of a non-diverse party will prejudice any of the parties in the litigation" and grant dismissal only "sparingly." *Id.* at 837–38. As such, courts disfavor the use of Rule 21 to sever non-diverse defendants to artificially create subject-matter jurisdiction. *See, e.g.*, *Hampton v. Insys Therapeutics, Inc.*, 319 F. Supp. 3d 1204, 1213–14 (D. Nev. 2018) (pointing out that using Rule 21 as an alternative argument is "an improper end-run around courts' rejection of the fraudulent misjoinder doctrine"). A defendant that lacks a jurisdictional basis for removal cannot rely on Rule 21 to artificially create subject-matter jurisdiction. *Id.* at 1214.

Albertsons and Safeway's alternative request for severance fails for many of the same reasons that their argument for fraudulent misjoinder fails. Defendants, and Plaintiffs' claims against Defendants, are properly joined because the allegations arise out of the same transactions and occurrences and there are multiple common questions of law and fact. Moreover, dismissing a non-diverse party to create federal subject-matter jurisdiction, without good reason, is impermissible. *See Newman-Green, Inc.*, 490 U.S. at 837–38. As Albertsons and Safeway fail to provide a good reason to dismiss any non-diverse party and have not demonstrated that any party is improperly joined in this matter, the Court declines to sever any party from this action pursuant to Rule 21, Fed. R. Civ. P.

In summary, the Court declines to sever or dismiss any party from this proceeding under either the fraudulent-misjoinder doctrine or Rule 21, Fed. R. Civ. P., because there is no legal or factual support for doing so. As there is not complete diversity between Plaintiffs and Defendants, the Court lacks subject-matter jurisdiction over this matter. For this reason, Plaintiffs' motion to remand this case to the Dakota County District Court, First Judicial District, is granted.[5]

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiffs' motion to remand, (Dkt. 44), is **GRANTED**.

2. This case is **REMANDED** to Dakota County District Court, First Judicial District.

Dated:  September 21, 2021         s/Wilhelmina M. Wright
                                   Wilhelmina M. Wright
                                   United States District Judge

---

[5] In light of this ruling, the Court declines to address Defendants' motions to dismiss.